PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LM INSURANCE CORPORATION, *et al.*, | ) |
| | ) CASE NO. 5:15CV2647 |
| Plaintiffs, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| GEORGE SZUHAY, | ) |
| | ) |
| Defendant. | ) **MEMORANDUM OPINION AND ORDER** [Resolving ECF No. 11 ] |

Plaintiff, LM Insurance Corporation, seeks declaratory judgment that it has no obligation under its Commercial General Liability insurance policy (the "CGL Policy") to satisfy a default judgment secured by Defendant against insured non-party, Empire Die Casting Co., Inc. ("Empire").[1]  ECF No. 1.  Defendant, George Szuhay, counterclaims for: (1) declaratory judgment that the leasing agreement between Empire and Defendant's employer was an "insured contract" covered under the CGL Policy; (2) declaratory judgment that Defendant's employer and/or Defendant are "additional insured" covered under the CGL Policy; and (3) damages caused by Plaintiff's bad faith refusal to pay benefits to Defendant under the CGL Policy.  ECF No. 8.

---

[1] By joint stipulation of the parties, Plaintiff Liberty Mutual Fire Insurance Company is entitled to judgment in its favor on the claims asserted in this action.  *See* Order, ECF No. 30.  Therefore, the Court will proceed by addressing only LM Insurance Corporation's claims against Defendant and Defendant's counterclaims against LM Insurance Corporation.

(5:15CV2647)

Pending before the Court is Plaintiff's Motion for Judgment on the Complaint (ECF No. 1) and Defendant's Counterclaims (ECF No. 8).  ECF No. 11.

For the following reasons, Plaintiff's motion for judgment on the pleadings is granted in its entirety.  Accordingly, the Court declares that Plaintiff LM Insurance has no obligation to satisfy the judgment obtained by Defendant against non-party Empire Die Casting Co., Inc. for employer intentional tort and premises liability.

### I. Background

George Szuhay was employed by Barnett & Brown Personnel Services, Inc., d/b/a Integrity Staffing Services ("ISS")—an employment agency that assigned Defendant to work at non-party Empire's facility as a machine operator pursuant to a leasing agreement between ISS and Empire (the "Leasing Agreement").  ECF No. 8 at PageID #: 145-46; ECF No. 23-1.  Empire was a pressure die casting manufacturer.  ECF No. 23-1 at PageID #: 353.  On or about November 3, 2009, while operating one of Empire's aluminum cast machines, Defendant sustained severe burns and bodily injury when 1,300° molten aluminum escaped out of the machine onto Defendant.  ECF No. 1-4 at ¶ 15.

A.  The Leasing Agreement

Beginning March 15, 2000 through May 1, 2012, the Leasing Agreement governed the terms under which ISS employed a "Leased Employee" to perform services for Empire.  ECF No. 23-1 at PageID #: 353, 363.  Under the terms of the Leasing Agreement, ISS was responsible for recruitment, hiring, and compensation.  ECF 23-1 at PageID #: 355.  Empire was responsible for "the direction and control of the Leased Employee[] at the work site, including . . . the

2

(5:15CV2647)

manner in which [a Leased Employee performs] the duties and responsibilities of their respective jobs." Id.

The Leasing Agreement included a reciprocal indemnification clause that provided as follows:

> **8. Indemnification**
>
> (a) [Empire] agrees that it will indemnify and hold ISS harmless from any and all "Damages" (as hereinafter defined) arising out of or related to (i) claims arising out of a breach of any obligation of [Empire] pursuant to this Agreement, . . . (iv) claims of Leased Employees arising out of conduct of [Empire], such as (but not limited to) wrongful or unjust termination, breach of contract (express or implied), promissory estoppel, negligent or intentional (tortious) conduct, negligent or intentional infliction of emotional distress[. . .. Empire] releases ISS from any claims or liability to it related to any of the foregoing and agrees not to institute any legal proceedings against ISS with respect thereto.
>
> (b) ISS agrees that it will indemnify and hold [Empire] harmless from any and all Damages . . . arising out of or related to (I) claims arising out of a breach of any obligation of ISS pursuant to this Agreement, (ii) claims of Leased Employees arising out of the conduct of ISS, such as the conduct described in paragraph 8(a)(iv) above, and (iii) claims from any third party arising out of or related to the conduct of a Leased Employee while the Leased Employee was acting under the direct supervision of ISS[. . .. ISS] releases [Empire] from any claims or liability to it related to any of the foregoing and agrees not to institute any legal proceedings against [Empire] with respect thereto.

ECF No. 23-1 at PageID #: 357-58.

The Leasing Agreement's indemnification clause defined "Damages" as "any claims, actions, demands, losses, costs, expenses, liabilities (joint or several), penalties and damages,

3

(5:15CV2647)

including, without limitation, reasonable counsel fees and costs actually incurred in investigating or attempting to avoid the same, or in defending or opposing the imposition thereof." *Id.*

Under the terms of the Leasing Agreement, Empire was also required to "maintain liability insurance coverage covering the acts of Leased Employees to the same extent as it maintains [liability insurance] coverage with respect to the acts of the Company's direct employees." ECF No. 23-1 at PageID #: 356. The Leasing Agreement provided that Empire "shall name ISS as an additional insured under such insurance." *Id.*

### B. Empire's Commercial General Liability Insurance Coverage with LM Insurance

LM Insurance Corporation ("LM Insurance") issued the CGL Policy, number TB5-Z81-034207-029, to named insured Empire for the policy period April 1, 2009 - April 1, 2010. ECF No. 1 at ¶ 10; ECF No. 1-2. The CGL Policy, obligates LM Insurance to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 1-2 at PageID #: 59. Among its exclusions for bodily injury and property damage liability, the CGL Policy provides no coverage for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at PageID #: 60. The CGL Policy also provides no coverage for "'[b]odily injury' to . . . [a]n 'employee' of the insured arising out of and in the course of . . . (a) [e]mployment by the insured[,] or . . . (b) [p]erforming duties related to the conduct of the insured's business[.]" *Id.* Under the terms of the CGL Policy an "employee" includes a "leased worker." *Id.* at PageID #: 71. A "leased worker" is defined as "a person leased to [Empire] by a labor leasing firm under an agreement between [Empire] and the labor leasing firm, to perform duties related to

4

(5:15CV2647)

[Empire's] business." *Id.* at PageID #: 72.

The CGL Policy provides two pertinent exceptions to this exclusion. First, the CGL Policy provides coverage for bodily injury and property damage liability that was "assumed in a contract or agreement that is an in 'insured contract'." ECF No. 1-2 at PageID #: 68. The CGL Policy, as amended, defines "insured contract" as follows:

> 9. "Insured contract" means . . .[t]hat part of any other contract or agreement pertaining to [Empire's] business . . . under which [Empire] assume[s] the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by [Empire] or by those acting on [Empire's] behalf.

*Id.*

Second, the CGL Policy provides coverage for the bodily injury and property damage liability of an "additional insured." The CGL Policy, as amended, refers to "additional insured" as including:

> [A]ny person or organization to whom [Empire is] obligated by a written agreement to procure additional insured coverage, but only with respect to "bodily injury" . . . caused, in whole or part, by [Empire's] acts or omissions or the acts or omissions of those acting on [Empire's] behalf:
>
> 1. In the performance of [Empire's] ongoing operations; or
>
> 2. In connection with premises owned by you provided that:
>
> (a) the "bodily injury", . . . giving rise to liability occurs subsequent to the execution of the agreement; and
>
> (b) the written agreement is in effect at the time of the "bodily injury", . . . for which coverage is sought.

5

(5:15CV2647)

ECF No. 1-2 at PageID #: 47.

      C.    State Court Litigation

On October 3, 2011, Defendant brought suit against Empire in the Court of Common Pleas, Summit County, Ohio, Case No. CV-2011-10-5563, for employer intentional tort and premises liability. ECF No. 8 at PageID #: 146, ¶ 10. Following some discovery, the case was voluntarily dismissed by Defendant on December 12, 2012. *Id.* at ¶ 11. On October 16, 2013, Empire petitioned for Chapter 11 Bankruptcy. *See In re E.D.C. Liquidating, Inc. (f/k/a Empire Die Casting Co., Inc.)*, No. 6:14-bk-61086 (Bankr. N.D. Ohio). On December 10, 2013, Defendant re-filed his action for employer intentional tort and premises liability against Empire in the Court of Common Pleas, Summit County, Ohio, Case No. CV-2013-12-5735 (the "Underlying Action"). ECF No. 8 at PageID #: 147, ¶ 15; ECF No. 1-4. On January 3, 2014, Empire filed a Notice of Suggestion of Automatic Stay in the Underlying Action, and the Underlying Action was stayed by the Court of Common Please, Summit County, Ohio. ECF No. 1 at ¶ 21.

On April 28, 2014, the United States Bankruptcy Court for the Northern District of Ohio granted Defendant's motion for relief from stay to pursue litigation in the Underlying Action. *See* Agreed Entry: Motion for Relief from Stay, ECF No. 1-5. However, the court limited any "recovery in favor of [Defendant] to enforce any judgment recovered . . . to [Empire's] insurance policies covering losses, if any, incurred by [Defendant] pursuant to the terms of said policies." *Id.* at PageID #: 121. On December 5, 2014, Defendant moved for default judgment against Empire for failing to answer or otherwise defend the action. ECF No. 8 at ¶ 17. On March 27,

6

(5:15CV2647)

2015, the Court of Common Pleas, Summit County, Ohio entered default judgment against Empire and, after a hearing on damages, awarded Defendant $696,937.09 for lost wages, medical bills, and non-economic damages on November 18, 2015.  *See* Final Order, ECF No. 1-7.

On December 18, 2015, Plaintiffs filed this action seeking declaratory judgment that neither Plaintiff LM Insurance nor Plaintiff Liberty Mutual has an obligation to satisfy the judgment in the Underlying Action.  ECF No. 1.  Defendant filed his Answer and Counterclaims for: (1) declaratory judgment that the Leasing Agreement was an indemnified "insured contract" covered under the CGL; (2) declaratory judgment that ISS and/or Defendant are "additional insured" covered under the CGL; and (3) damages caused by Plaintiffs' bad faith refusal to pay benefits to Defendant under the CGL.  ECF No. 8.  Plaintiffs then filed the within motion. The motion is ripe for adjudication.

## II.  Standard of Review

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings."  A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6).  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  "'To survive a [Rule 12(b)(6)] motion to dismiss, [the complaint] must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Traverse Bay Area Intermediate School Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

7

(5:15CV2647)

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (*quoting Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).  The Court "'must construe the complaint in the light most favorable to [the] plaintiff . . . .'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (*quoting League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)).  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

"An insurance policy is a contract." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003).  "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Id.*  The Court gives effect to the contracting parties' intent by:

> examin[ing] the insurance contract as a whole and look[ing] to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents. *Westfield Ins. Co.*, 797 N.E.2d at 1261.  Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.  *Lane v. Grange Mut. Cos.*, 543 N.E.2d 488, 490 (Ohio 1989).  This is particularly true when considering provisions that purport to limit or qualify coverage under the policy.  *Westfield Ins. Co. v. Hunter*, 948 N.E.2d 931, 935 (Ohio 2011).

8

(5:15CV2647)

*ACE European Grp., Ltd. v. Abercrombie & Fitch Co.*, 621 F. App'x 338, 340 (6th Cir. 2015) (quotations omitted).

### III. Analysis

The parties agree that, pursuant to the Leasing Agreement between ISS and Empire, Defendant was employed by ISS and Defendant was a leased worker assigned to work at Empire. ECF No. 11 at PageID #: 251; ECF No. 12 at PageID #: 261. The parties also accept each other's assertions that the Leasing Agreement governed the Empire-ISS relationship, and that the CGL Policy was in effect at the time of Defendant's injury. *See* ECF No. 11 at PageID #: 250, 255-56 ; ECF No. 12 at PageID #: 261; ECF No. 23 at PageID #: 337. In its motion, Plaintiff contends that, under the CGL Policy's Employer's Liability exclusion, leased workers are considered to be Empire employees excluded from coverage for bodily injury and premises damages liability. ECF No. 11 at PageID #: 254-55. For these reasons, Plaintiff asserts that LM Insurance is entitled to judgment on its declaratory judgment claim (ECF No. 1) that it has no obligation to satisfy a default judgment secured by Defendant against insured non-party Empire. ECF No. 11 at PageID #: 255.

In his counterclaims and reply to Plaintiff's motion, Defendant seeks declaratory judgment that he was an insured under the CGL Policy pursuant to both the "insured contract" and the "additional insured" exceptions to the CGL Policy's Employer's Liability exclusion. ECF Nos. 8, 12. Because of these exceptions, Defendant contends that he is entitled to relief, Plaintiff is liable for payment to satisfy the default judgment secured by Defendant against non-party Empire, and Plaintiff's motion for judgment on the pleadings should be denied. ECF

9

Case: 5:15-cv-02647-BYP  Doc #: 31  Filed: 11/29/16  10 of 19.  PageID #: 409

(5:15CV2647)

No. 12.

"When seeking to determine rights and duties under an insurance contract, there is no legal requirement that exceptions to exclusions be separately identified as needing interpretation when the issue is one whether coverage is afforded by the policy in question." *Cravat Coal Co. v. Commercial Union Ins. Co.*, No. 95 BA 26, 1997 WL 35419, at *5 (Ohio Ct. App. Jan. 24, 1997). Nevertheless, under Ohio law:

> [e]xclusions in insurance policies are construed narrowly such that "that which is not clearly excluded from the operation of the contract is included in the operation thereof." *Southside River–Rail Terminal, Inc. v. Crum & Forster Underwriters of Ohio*, 811 N.E.2d 150, 154 (Ohio Ct. App. 2004) (quoting *Home Indemn. Co. of New York v. Plymouth*, 64 N.E.2d 248, 248 (Ohio 1945) (paragraph two of the syllabus)). The burden is on the insurer to show that an exclusion specifically applies. *Neal–Pettit v. Lahman*, 928 N.E.2d 421, 424 (Ohio 2010). [O]nce the insurer establishes that an exclusion is applicable, the burden shifts back to the insured to establish the applicability of an exception to the exclusion. *Goodrich Corp. v. Commercial Union Ins. Co.*, Nos. 23585, 23586, 2008 WL 2581579, at *23 (Ohio Ct. App. June 30, 2008). If a term in an exception to an exclusion is unambiguous, and if the context in which it is employed does not indicate that it should be given any other meaning, then we must give that term its plain meaning. *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 597 N.E.2d 1096, 1102 (Ohio 1992). If a term is ambiguous, however, then, as with terms in the main body of the contract, it must be construed broadly in favor of the insured and against the insurer.

*Mosser Const., Inc. v. Travelers Indem. Co.*, 430 F. App'x 417, 421 (6th Cir. 2011) (quotations omitted).

Defendant does not argue the ambiguity of the terms of either exception asserted. Nor does the Court find that the context indicates the terms of either exception should be given any

10

(5:15CV2647)

other meaning.  Therefore, the resolution of Plaintiff's motion turns on the plain meaning of both the "insured contract" and "additional insured" exceptions to the CGL Policy's Employer's Liability exclusion.  The court will address both exceptions below.

    A.    <u>The "Insured Contract" Exception</u>

Defendant counterclaims for declaratory judgment that he is entitled to judgment and obligation of payment because, under the CGL Policy, the Leasing Agreement between ISS and Empire constituted an "insured contract" due to a reciprocal indemnity clause covering tort liability.  ECF No. 8 at PageID #: 150, ¶¶ 26-31.  Plaintiff concedes that the "insured contract" exception constitutes an exception to the CGL Policy's Employer's Liability exclusion.  However, Plaintiff counters that the "insured contract" exception does not apply in Defendant's case because Defendant is attempting to enforce his judgment against non-party indemnitor-Empire's insurer when Defendant does not have a judgment against ISS, the indemnitee, and therefore does not have a judgment for liability assumed under an "insured contract."  ECF No. 11 at PageID #: 255-57; ECF No. 19 at PageID #: 337-39.

> [I]n order to determine whether [the leasing] agreement is an insured contract under the policy, [the Court] must first look to the indemnity [clause] itself and determine whether the [leasing] agreement obligated [Empire] to assume the tort liability of another.  When interpreting an indemnity [clause in an agreement] between commercial parties of equal bargaining power, a court bound by Ohio law must construe the words used in the [clause] in their ordinary and popular sense.  *Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 267 (Ohio 1987).

*Lubrizol Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 200 F. App'x 555, 562 (6th Cir. 2006) (quotations omitted).

(5:15CV2647)

The CGL Policy defines an "insured contract" as one under which Empire "assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." ECF No. 1-2 at PageID #: 23. By the plain language of the indemnity clause within the Leasing Agreement between Empire and ISS, the Court finds that the Leasing Agreement is an "insured contract" under the CGL Policy's particular language because it requires the assumption by Empire of the tort liability of another party. The Leasing Agreement includes a reciprocal indemnity clause that provides, in part, that Empire and ISS will indemnify each other from any and all damages related to claims of breach of the Leasing Agreement or claims of Leased Employees arising out of either company's tortious conduct. Thus, Empire—the indemnitor—is required to indemnify ISS—the indemnitee—from damages for breach of Empire's obligations under the agreement and for claims of Leased Employees arising out of Empire's tortious conduct. Absent evidence in Defendant's counterclaim, reply, or the exhibits attached thereto of an action or judgment against ISS for Empire's breach or tortious conduct, the Court has no basis to find the indemnity clause between ISS and Empire was triggered in Defendant's case. Regardless, Defendant attempts to persuade the Court that "a lawsuit against an indemnitee is not required to implicate the indemnity provision." ECF No. 12 at PageID #: 270.

To buttress this argument, Defendant points the court to non-binding case law that is distinguishable from this case. See *Harleysville Ins. Co. v. Physical Distribution Servs., Inc.*, Civ. No. 10–2591 (DWF/AJB), 2012 WL 264194 (D. Minn. Jan. 30, 2012), *aff'd*, 716 F.3d 451

(5:15CV2647)

(8th Cir. 2013). In *Harleysville*, Physical Distribution Services, Inc. ("PDSI") entered into an employee leasing agreement with trucking company, Miller Transporters, Inc. ("Miller"), under which PDSI provided employees to Miller. *Harleysville Ins. Co. v. Physical Distribution Servs., Inc.*, 716 F.3d 451, 454 (8th Cir. 2013). One such employee, injured his lower back, hip, and leg while working as a tank washer at a Miller truck maintenance facility. *Id.* The employee sued Miller in West Virginia state court for "(1) negligently failing to provide a reasonably safe workplace, and (2) intentionally exposing him to unsafe working conditions in violation of West Virginia law." *Id.* (quotations omitted).

    The employee leasing agreement between PDSI and Miller included an indemnity clause stating, in part, that PDSI would indemnify Miller from any and all claims, including personal injury, that relate to employees assigned to Miller. *Id.* at 456. The clause also required that PDSI obtain insurance to cover the indemnification and name Miller as an additional insured. *Id.* After the employee's suit was filed, Miller tendered the suit to PDSI. *Id.* at 454. PDSI then notified its insurer Harleysville Insurance Company ("Harleysville") and, once Miller and the employee reached a settlement, PDSI asked Harleysville to indemnify Miller for the settlement amount. *Id.* Harleysville denied coverage on grounds that the general commercial liability insurance policy *PDSI obtained from Harleysville*[2] did not cover Hughes' suit against Miller. *Id.*

---

    [2] This factual distinction alone disposes of Defendant's argument but, in the interest of justice, the Court will continue.

13

(5:15CV2647)

Harleysville then brought suit seeking, among other claims brought by the parties, declaratory judgment that it was not required to indemnify Miller for the settlement under the policy. *Id.*

On the parties' cross motions for summary judgment, the district court found, and the Eight Circuit affirmed, that Harleysville was "required to provide coverage for PDSI's indemnity obligations to Miller because the [employee leasing agreement] between Miller and PDSI constitute[d] an 'insured contract' so as to fall within the exception to the contractual liability exclusion in the Policy." *Harleysville*, 2012 WL 264194, at *4. Harleysville's policy, similar to the policy before the Court in this action, included a contractual liability exclusion for "bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." *Harleysville*, 716 F.3d at 456 (quotations omitted). The policy also included an exception to the exclusion for "damages . . . [a]ssumed in a contract or agreement that is an 'insured contract'" and defined an insured contract as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." *Id.* But, at issue in the dispute between the parties in *Harleysville* was Harleysville's assertion that coverage was defeated by the end of the exception addressing causation— "provided the 'bodily injury' or 'property damage' is caused, in whole or in part, by you or by those acting on your behalf." *Id.* at 459. The Eight Circuit, predicting Minnesota law on the precise contractual language "caused, in whole or in part," affirmed the district court and concluded that [under the facts of the case not discussed herein] PDSI, or those acting on its

14

(5:15CV2647)

behalf, at least partly caused the employee's bodily injury within the terms of Harleysville's policy. *Id.* Hence, the Court finds that Defendant's reliance on *Harleysville* is misplaced.

The Court declines Defendant's invitation to traverse through a comparative analysis of Ohio and Minnesota causation law. Actions that sound under an "insured contract" exception uniformly involve an insurer indemnifying the named insured's indemnitee. *See, e.g., Lubrizol Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 200 F. App'x 555 (6th Cir. 2006) (insured contract exception not triggered where indemnity agreement did not obligate insurer to cover indemnitor's alleged tort liability to indemnitee); *Heinz-Gert K. GRM v. Great Lakes Gen. Agency*, No. 03CA008418, 2004 WL 2674594 (Ohio Ct. App. Nov. 24, 2004) (insured contract exception not triggered where personal injury action brought against indemnitee and indemnitee claimed indemnitor's contractual duty to indemnify). Unlike the injured employee in *Harleysville*, Defendant is attempting to enforce a judgment against LM Insurance (the insurer of Empire, the indemnitor) without a having secured a judgment against ISS (the indemnitee). Defendant's state tort action lies against Empire—the indemnitor, not ISS—the indemnitee. Therefore, the "insured contract" exception in the CGL Policy cannot be the basis of judgment in Defendant's favor. Accordingly, Defendant's counterclaim for declaratory judgment is denied.

B.  The "Additional Insured" Exception

Defendant also counterclaims for declaratory judgment that he is entitled to judgment and obligation of payment under the CGL Policy's "additional insured" exception. ECF No. 8 at PageID #: 152, ¶¶ 36-40; ECF No. 12 at PageID #: 277-78. In opposition, Plaintiff maintains

15

(5:15CV2647)

that, without a claim or judgment against ISS, the "additional insured" exception is not triggered.

ECF No. 11 at PageID #: 257-58.

Under the terms of the Leasing Agreement, Empire was required to "maintain liability insurance coverage covering the acts of Leased Employees to the same extent as it maintains [liability insurance] coverage with respect to the acts of the Company's direct employees." ECF No. 23-1 at PageID #:356. The Leasing Agreement also provided that Empire "shall name ISS as an additional insured under such insurance." *Id.* Though the CGL Policy, as amended, does not list ISS as an additional insured it refers to "additional insured" as including:

> [A]ny person or organization to whom [Empire is] obligated by a written agreement to procure additional insured coverage, but only with respect to "bodily injury" . . . caused, in whole or part, by [Empire's] acts or omissions or the acts or omissions of those acting on [Empire's] behalf:
>
> 1. In the performance of [Empire's] ongoing operations; or
>
> 2. In connection with premises owned by you . . .

ECF No. 1-2 at PageID #: 47.

Even construed broadly, the "additional insured" exception cannot be the basis of judgment in Defendant's favor. The Leasing Agreement between ISS and Empire clearly states that Empire's obligation was to maintain liability insurance coverage *to the same extent* as Empire maintained coverage for the acts of its own employees. The CGL Policy issued by LM Insurance was the liability insurance maintained by Empire at the time of Defendant's injury. The CGL Policy does not cover bodily injury to an Empire employee arising out of, or in the

16

(5:15CV2647)

course, of employment by the insured, or *performing duties related to the conduct of the insured's business*. Under the terms of the CGL Policy an "employee" includes a "leased worker." Defendant concedes that he was a leased worker. ECF No. 12 at PageID #: 278. Empire was in the business of manufacturing pressure die casting. Defendant was injured while operating one of Empire's aluminum cast machines. Defendant was an "employee" injured while performing duties related to the conduct of Empire's business. Thus, his injury is excluded from coverage under the CGL Policy.

Not only is this conclusion consistent with the Leasing Agreement between ISS and Empire, it is consistent with "the normal purpose of a commercial general-liability policy;" the policies "usually do not cover injuries to a businesses' workers ." W. World Ins. Co. v. Hoey, 773 F.3d 755, 763 (6th Cir. 2014) ("Unlike worker's compensation insurance or employers' liability insurance, which exist to provide employers with coverage for injuries that occur to employees during the scope of employment, the sole purpose of commercial general liability insurance is to provide coverage for injuries that occur to the public-at-large.") (citations omitted).[3] Accordingly, Defendant's counterclaim for declaratory judgment is denied.

C. Bad Faith

Having found that neither exception applies, Defendant's bad faith claims cannot lie.

---

[3] The issue of whether coverage under the CGL Policy's "additional insured" exception would be triggered by a judgment against ISS in Defendant's favor is not before the Court.

17

(5:15CV2647)

Under Ohio law, "[b]ased upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer." *Vargo v. State Auto Mut. Ins. Co.*, No. 4:09CV2304, 2011 WL 31116, at *10 (N.D. Ohio Jan. 5, 2011) (quoting *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, Syll. ¶1 (Ohio 1983)).  Absent a contractual relationship between the insured and the insurer, there is no bad faith claim. *Soriano v. State Farm Fire & Cas. Co.*, No. 3:07CV1148, 2008 WL 2079409, at *4 (N.D. Ohio May 15, 2008) (citing *Gillette v. Estate of Gillette*, 837 N.E.2d 1283, 1287 (Ohio Ct. App. Sept. 30, 2005) ("In order for an insured to assert a breach of duty of good faith claim, the insured and insurer must share a contractual relationship")).  Thus, "Ohio law clearly and unequivocally provides that a claim of bad faith cannot be brought against an insurer by a third-party claimant." *Medical Assur. Co. v. Martinez*, No. 1:06CV1248, 2008 WL 2227345 at *4 (N.D. Ohio May 6, 2008), *adopted by* 2008 WL 2227340 (N.D. Ohio May 27, 2008) (citing cases).

     For the purpose of enforcing his default judgment award for bodily injury sustained as a leased worker at Empire, the pleadings nor the exhibits attached thereto show that Defendant was either a named insured or an additional insured under Empire's CGL Policy with Plaintiff LM Insurance.  Therefore, the Court finds that there is no insurer-insured relationship between Plaintiff, and Defendant's bad faith claims cannot lie against Plaintiff.

(5:15CV2647)

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted in its entirety.  Defendant's counterclaims are denied and dismissed with prejudice.  Accordingly, the Court declares that Plaintiff LM Insurance has no obligation to satisfy the judgment in Defendant's Underlying Action against non-party Empire Die Casting Co., Inc. for employer intentional tort and premises liability.

    IT IS SO ORDERED.

 November 29, 2016                     */s/ Benita Y. Pearson*  
Date                                       Benita Y. Pearson  
                                               United States District Judge